May it please the court, and I'd like to save four minutes for rebuttal please, for decades the courts have recognized that a minority defendant has a fundamental right not to be tried before a jury from which members of his racial group have been discriminatorily excluded. Defense counsel representing a minority defendant has a duty to protect his client from such discriminatory activity. Defense counsel here showed that she was aware of that duty when she moved before trial to obtain a representative panel with a sufficient number of Hispanics. So is your position that any defense lawyer has to do that or be ineffective? Or could there be reasons not to do it that would not be ineffective? I can imagine a situation where there was one minority juror of the client's group whom counsel chose not to complain about when there was a peremptory challenge. What if she just liked the jury? What if she just thought it was a good jury, or at least a good enough jury despite whatever issues there were about race and that the alternatives could be worse? The district court made a finding, which is excerpt of record volume 1, page 7-1, that defense counsel said she did not have a strategic reason for making a ruling. That's not what I asked you. I asked you, is your position that there could never be a good reason? In theory there could be a good reason, but on this record there is no reason. There is no good reason. Well, just a minute, Counselor. As I understand it, you appealed this specific case on direct appeal to the California Supreme Court, correct? Yes. Did you include this particular claim in that direct appeal? We included on the direct appeal... You didn't include this, did you? It was included on habeas corpus. Well, yeah, on habeas corpus. I'm talking on direct appeal. Under California law, we were not allowed to present claims of ineffective assistance of counsel. Well, I'm not even asking about that. Why didn't you present a Wheeler claim on direct appeal? Because counsel didn't make a motion, and therefore the only way under California law we could raise it was as ineffective assistance of counsel. And there wasn't enough here to say it was ineffective? I've seen a lot of California cases go on ineffective on first appeal. Well, the Supreme Court initially granted an OSC on the habeas as to many claims, and then a year later voted 4-3 to withdraw the OSC. Therefore, there was no hearing for the California courts on this claim of ineffective assistance or failure to make a Wheeler motion. And so the court ruled, as I understand it, that there was no ineffective assistance as far as the California Supreme Court is concerned. The court issued a one-word ruling which is denied. This is a pre-AEDPA case. AEDPA does not apply. I understand that, but nonetheless, the California Supreme Court, looking at all your good arguments, said, in effect, there is nothing here denied. The California Supreme Court also said that as to some of the issues where Judge Ishii issued us, gave us relief on special circumstances and on penalty. But, Mr. Bedrick, as I understand your theory in response to Judge Berzon's question, your theory has to be that it is per se ineffective assistance of counsel for a defense lawyer at every trial to fail to make a Wheeler motion, even though here the prosecutor permitted jurors 3 and 5, both Hispanics, to sit, as well as a Hispanic alternate. Is that true? I'm sorry? Isn't that true? That your theory is that that is per se ineffective assistance of counsel? No, Your Honor, that's not my position. My position is, on this record, given the fact that defense counsel knew that she wanted to make sure there were enough Hispanics on the jury, and given the fact that the prosecutor perhaps orally challenged 6 out of 8 Hispanics on those set of facts, it was IAC. But didn't the jury actually accurately mirror the reflection of the Hispanic community in Kern County at the time, about 16.8%? That may have been sufficient for purposes of a representative panel motion, but that is not sufficient for purposes of Wheeler or for Batson, which allow a lawyer on either side to raise an objection when the opponent is perhaps orally challenging members of a protected class. But you're not taking the position that a prosecutor can never challenge a minority member, are you? Certainly not. There certainly are valid challenges of minorities. There are lots of valid challenges of minorities. So in the absence of recollection by either of the two trial lawyers who were questioned years later about their satisfaction with the panel, what was wrong with our panel looking at the 1,000-page transcript of Waudier and trying to ascertain in the face of a postcard denial whether the California Supreme Court might have actually looked at the merits of this claim and concluded that there was no merit to it on the basis of the record? That's a thorough question with about seven parts of answer. Take any part you want. Thank you. First, as to the panel coming up with possible reasons for the prosecutor to challenge these people, that was speculation. That is prohibited by Johnson and by Paulino. You cannot put words in the mouth of the prosecutor. I don't understand that. I know you raised that issue in your briefs. But we're supposed to consider an effective assistance of counsel from the viewpoint of the defense counsel at that time. And so we're supposed to entertain reasons that she might not have raised the challenge, and thinking that her challenge wouldn't be meritorious because the prosecutor would have a reason, a non-racial reason, would be part of the analysis. So I didn't quite understand that part of your argument. Defense counsel was asked by both me and by the attorney general, do you have any strategic reason not to make a Wheeler motion? And she variously said, I don't remember, I don't remember. I still don't see the Wheeler motion. And as a result, the district court made a finding that defense counsel said she did not have a strategic reason. But let me understand, is it your position that under Strickland, if a defense counsel says they don't remember their strategic reason, then we must conclude that they had none, and that therefore their action is deficient? The way we analyze this is as follows. Under Johnson v. California, we look first to see if there's a prima facie case. That's step one of Batson analysis. But the Strickland analysis, can you just explain the Strickland analysis? I need to go through, Your Honor, I need to go through the steps of Batson before I get to Strickland. But this is not a Batson claim. This is IAC under Wheeler. I understand that. So counsel under Can you start with the Strickland format, which says we have to determine whether the attorney was deficient, whether any reasonable attorney could have had reasons for doing the actions that she took, and entertain all possible reasons. So starting from that perspective, and then explain how you analyze the Strickland claim. That's another five-part question. I'll try, Your Honor. The defense counsel under Wheeler, there's a history in this country, unfortunately, of racial discrimination and jury selection. Wheeler gave counsel a tool to prevent that. And the tool allowed counsel to make an argument that there was a prima facie case based on disproportionate challenges, based on challenging most or all of the members of the protected group, and including based on the fact that the defendant was a member of a minority and that the majority jurors and the victim was the same as the majority jurors. Having that as a tool, any reasonable defense counsel on this record, seeing the prosecutor parentally challenge six of eight minority jurors would necessarily have to make a Wheeler motion. Now, why is that? That's the question. You say it as a per se rule, which is why you've gotten the question, is this a per se rule? So can you explain why it is that any reasonable defense counsel would have had to make that challenge? In response to both yours and other questions, it's not a per se rule in every case. It only becomes a per se rule here where the prosecutor challenges such a high number and such a disproportionate number. Let's suppose each one of the jurors that were Hispanic jurors that were dismissed were adamantly opposed to the death penalty, each one of them. That would be an appropriate ground for the prosecutor to state. But, number one, the prosecutor. But, nonetheless, and that was clear, and that those were the challenges, those were the strikes. In fact, let's just say only the Hispanics said that. How about letting me finish my question? And so the prosecutor struck only the Hispanic, the six jurors stricken were the only ones that he struck, but every one of them was adamantly opposed to the death penalty and nobody else on the panel was. Is your proposition that, notwithstanding that there was a clear pattern in what the prosecutor was doing, that the defense counsel would have had to make a Wheeler motion, at least to make a record as to what the reasons were? To the answer to your, under your Honor's. I hope that's only a one-part question. Thank you. Under your Honor's hypothetical question, the answer is no. Defense counsel would not have to make a Wheeler motion, but in this case all of the six subject Hispanic jurors said they were in favor. Well, I understand. It was a hypothetical. I'm just trying to test. We're all trying to, I think, figure out when does the line get crossed? Is it if there's one out of the eight, two out of the eight? When does the defense counsel have to, as you say, use the tool given to challenge the prosecutor's apparent racial discrimination in jury selection? Under Wheeler, the test is whether the prosecutor has struck most or all. Under People v. Snow, decided a couple of years after this trial, the California Supreme Court found a prima facie case when the prosecutor perhaps earlier challenged six out of eight members of a minority group. Just a minute. If I might, just a minute. I'm a little worried about what you're saying about Wheeler. I read Wheeler. It says disparity where every member of the defendant's race was struck from the jury by the use of the preemptory challenges. If I read People v. Allen, which is right after Wheeler, it says only in cases where the prosecutor used preemptory challenges on every juror belonging to the defendant's group. If I read People v. Rousseau, which was again after Wheeler, it says striking all of the African-American veneer members through use of preemptory strikes was not enough to establish prima facie discrimination. So even if I go to Wheeler, it doesn't seem to me that counsel needs to do anything. Wheeler at 22 Calford 280 says, quote, a party may show that its opponent has struck most or all of the members of an identified group, or, quote, has used a disproportionate number of preemptories. And then the Supreme Court after Wheeler in People v. Allen says where they used all, they struck every juror, and then when Rousseau striking all of the African-American veneer members was not discrimination. That's the California Supreme Court after Wheeler was said. But under those circumstances, those were cases where the prosecutor struck all the minority jurors. In the quotes that I just gave you, Wheeler does not require that. Now, just a minute. In Rousseau, they struck them all, and that wasn't enough to establish prima facie discrimination. I don't know Rousseau. I don't believe it was California Supreme Court. But the key case in that sequence as to what the California Supreme Court meant in Wheeler was in People v. Snow decided in 1987 while our direct appeal was pending. And in Snow, the California Supreme Court acted in accordance with Wheeler and reversed a conviction where they prosecuted a preemptorily challenged 6 out of 8. And that was long after 1983, correct? Had our trial counsel made a Wheeler motion, Snow would have been the law when this case was decided on direct appeal. And under the law in Snow, there would have been a reversal and a new trial. Here's a question I've got that we've been circling around. As you read the voir dire, we have a defense counsel who herself has an Hispanic surname, as she actually mentions during voir dire. And she asks several of the prospective Hispanic jurors about their Hispanic surname and, in effect, would it make any difference to you as you decide the case. So it's very clear that she's conscious during the voir dire of the ethnic identification of these prospective jurors. I know that the district court found that she had no strategic reason for not challenging them. This one's kind of tricky, though, because it's very clear that she was focused on whether or not they were Hispanic and the possible consequence of that Hispanic identification on their judgment. Help me out so that I can see why we know at least sufficient to get it to the IAC stage why she didn't make some decision that, you know, there are going to be some Hispanics that are pro-death penalty. I mean, you don't necessarily want every Hispanic. So help me out here. What do we know that tells us with sufficient certainty that she shouldn't have wanted that she should have wanted some of these people on the jury? There's a history of racial discrimination and jury selection so that every counsel at that point should understand she has to protect her client from that. She made a motion for a representative panel. But, no, I'm not asking about racial discrimination in general. I'm not asking for the moment about racial discrimination by the prosecutor. I'm asking about what we can read, if anything, into the motivation of the defense counsel. Your Honor, if you're asking me, I think there is no motivation. I think this defense counsel thought along the lines of what Judge Tallman was saying and did not know the difference between a motion for a representative panel and a Wheeler motion. I think she just didn't understand the difference. Let me ask you about your arithmetic. So there were eight Hispanic jurors, right? Two were seated. Yes. And I think as to two more, I think you've conceded that they were the kind of jurors that could probably have been struck because they were opposed to death penalty. None of these six jurors who we're talking about said they've solidly said they were opposed to the death penalty. They were close enough. But even if that would not give trial counsel... Okay, you're going on. I haven't asked the question. I just asked the question about the arithmetic. I haven't posed the question. So you disagree. I thought there were two jurors who said they opposed the death penalty. I think a couple of jurors went back and forth. Okay. So why are those in the two column rather than the six column? Two are seated and then two more are excluded for what seem to be entirely plausible reasons. Why doesn't that bring the count up to four to four, which doesn't put you into the Wheeler penumbra anyway? We're at the prima facie stage, Your Honor. If the prosecutor had said, if we had gotten beyond the prima facie stage and the prosecutor had given those as reasons, then perhaps the trial judge might have ruled those grounds for challenge were proper. But there is no law that says that defense counsel, as I said, those jurors could go either way. It said they could go either way in the death penalty. They were not dismissible for cause. Therefore, competent defense counsel... So if he strikes every Hispanic juror to come along, you'd say at some point, well, you know, there is an influence of discrimination. But he seats some, and as to some, it's perfectly clear why they were struck. They were the kind of jurors that any prosecutor would strike regardless of race because of their views on death penalty. Why, if you're going along and being a... and sort of keeping count of these things, if you're a trial lawyer, wouldn't you say, well, those, you know, you're really only about every... only about half the jurors do I see even a pattern of... a beginning pattern of discrimination. Why wouldn't that be the... Defense counsel... I'm sorry. I mean, you have to put the... is your position that under Wheeler and Batson, a defense lawyer must put a... the prosecutor to a challenge every time there is an arguable pattern of discrimination? No, Your Honor. I don't think that's the case, but I think each one of these jurors said in some way or another that they could vote for the death penalty. The prosecutor might have thought, if he articulated, which he did not, might have thought that they weren't strong enough for his position, but all said they would impose the death penalty. Why isn't the ultimate problem here just a vacuum of knowledge? There... it seems that there could be ineffective assistance with regard to raising a Batson issue, i.e., there are some cases, for example, where the attorney says, you know, I just forgot about it or I didn't realize I could do it or in one case she said I was too embarrassed to say it. All right. That's one category. So there could be. And there's another category of cases in which there wouldn't be an effective assistance. For the reasons such as we were discussing, i.e., no matter what the... even if there could have been a successful Batson motion, the lawyer's overall judgment could be I'm better off with this jury than what I might get. And don't forget that what she's going to get here is not the jurors that she didn't get. She's going to get a whole new veneer, which could be worse. So the question is, what do we do with this huge vacuum? The vacuum in this case is no different than that in Paulino, Castro, Paulino v. Harrison. In that case, defense counsel was smart enough to make a Wheeler motion. That was a merits Batson case, right? If Your Honor will allow me to. It was a merits Batson case only because counsel made the motion. But when we got to the merits, the prosecutor could not state any reasons, could not remember any reasons, didn't have any notes. But that's a completely different vacuum than the vacuum I'm talking about. The vacuum I'm talking about is not a vacuum about what the prosecutor did. It's a vacuum about what the defense lawyer did. The defense lawyer has said in three different ways, I did not have any strategy for not making a Wheeler motion. With respect, I don't think that's what she said. In the declarations, she was asked, did I have a strategic reason? She said at one point, I don't remember. But in the declaration which I drafted her at ER Volume 3, 758, she made a general statement that with respect to all the questions I'm asked here, I did not have any trial tactic or strategy unless specifically noted below. And that is why the district court made a finding that she said she did not have any strategic reason for not making a Wheeler motion. And that's a finding of fact by the district court, to which I believe deference should be given. Mr. Vedra, going back to the Chief's question, wasn't there also a Hispanic juror who was defense counsel's letter carrier? And you're not challenging the exercise of the peremptory for that reason. That is correct. There are six Hispanic jurors who are peremptorily challenged. Before this court, I have argued what I believe are my three best. Well, I understand that. But I'm trying to do the Chief's math here. So then does that change it from 4-4 now to 5-3? I don't believe there's any case that calculates that way because that is a— Well, am I doing the math correctly? We're still talking about the same six, are we not? We're talking about the same six. Two who equivocated and one who was a letter carrier that you're not challenging. If defense counsel is trying to protect— And then we've got two who were seated. If defense counsel is trying to protect the defendant from racial discrimination and jury selection, when she sees this large a number being challenged, she has the obligation to protect her client by— Regardless of what, just because they share a common ethnicity, regardless of what, even if she looks at it and says, look, I can understand five of these perfectly well. I might have a problem or a question about the remaining three. She has to challenge them and put the prosecutor to the test. You know, those jurors that are talking about that said they could go either way. I got reversed in Brown v. Utrecht. You remember Brown v. Utrecht where the juror equivocated? And, you know, it's—equivocation often is a good enough reason for the prosecution to strike somebody. That's what our Supreme Court has held. But if defense counsel is in a position where she sees minority juror after minority juror being struck, she has the obligation to protect your client by making her motion. And like in a trial, not every motion you make is a perfect motion. And yet she looks at the same group of jurors later and says, I would have done the same thing. She never said that. She was asked a couple of times and said, I don't remember. If she said, I would have done the same thing, we wouldn't be here. Didn't she say that even in hindsight she didn't see a reason for a Wheeler motion? That's correct. But I believe that's because she did not understand the difference between a Wheeler motion and a motion for a representative panel. But I think it just goes to Chief Judge Kaczynski's question, which is that she said she would have done the same thing, i.e., she wouldn't have made the motion. She doesn't see a reason to make the motion. But that means she was no more intelligent when she wrote this motion—when she gave that answer than when she was at this trial. Or that she sees no reason now, even in hindsight, to have made the motion. Help me out. When was it that she said, I don't see any reason even now to make the motion? When did she say that? Four years. Four years after? Question minus. And we were then litigating about Wheeler? Yes. And you're saying she didn't understand Wheeler even then? The status of this defense counsel is, as of now, she has resigned from the state bar because she, with disciplinary reasons pending, this is a poor woman who was totally overworked. She went to trial with no co-counsel, which almost everybody does. She went to trial with no investigator because her investigator, who was her husband, shot her two months prior to trial. And the prosecuting office was prosecuting him with a restraining order. I understand all that. Yes. So she has a conflict of interest because she's going to charge the prosecutor's office with some form of racial discrimination, even as the prosecutor's office is representing her. I got that, too. But I'm going to focus on this case in terms of, for the moment, what reasons she might or might not have had. And if she says some years after, well, I wouldn't have made the motion, even now as I look at it, I wouldn't have made the motion, it's hard for me to believe she wouldn't have made the motion because she doesn't even know what Wheeler says. She might be an effective assistant to counsel four years later. Yes. But I have trouble in thinking that's because she still hasn't read Wheeler. This is the phrase you're quoting from is in a declaration prepared by the attorney general. Counsel was never deposed. We never had sufficient fact-finding. We don't know why she made that statement. We don't know what she knew about Wheeler. Have you asked for an evidentiary hearing? Pardon me? Have you asked for an evidentiary hearing, and is there any utility in doing it? I asked for one, and we made a motion before the district court for an evidentiary hearing. That was denied. Are you still asking for one? Are you asking for one on this as well as the prejudice prong now? Is that what you want us to do? I believe that if, under these circumstances, I believe that if the court thinks more information is needed from defense counsel, then, yes, we should ask for an evidentiary hearing. Are you entitled to one? Did you attempt to develop this record before the state court on this issue? The state court sent us a postcard denial. We're not allowed. Our habeas petition was denied. Did you ever ask for an evidentiary hearing on this issue in state court? You can't get an evidentiary hearing from the state court if they don't issue an order to show cause on the habeas. Okay. But you didn't ask for one? You can ask. It was not allowed under state law. And, Your Honor, my clock says I get three minutes to say if a rebuttal, and I've not gotten a prejudice yet. So I guess I should. Maybe you should save those three minutes. Save my three minutes. Thank you. Okay. We'll hear from the warden. You represent the warden, don't you? And just as we hear from petitioner, when we hear from his lawyer, we assume you are going to speak for the warden. Yes, Your Honor. Okay. Then we'll hear from the warden. In the midst of jury selection in this case, counsel had to make a decision whether she wanted to start over with a new jury, for that is a result of a successful wheeler motion. So in short order, counsel had to decide, A, can I prevail on a wheeler motion? And, B, is it in the best interest of my client to prevail? Why didn't she say that? That doesn't sound like it's hard to remember that. She says four years after a trial, she can't think of why she had a, what her strategy was, that there was any strategy. Why wouldn't she just say that simple thing? Well. That's sort of a fundamental, easy thing to remember. Well, Your Honor. You're telling us that we should now speculate what was in her head when should we have a declaration from her which says, I didn't have a strategy? Well, I think her declaration can be read a number of ways. She gave two declarations. I think the sense of the district court was that she couldn't really remember. That's not what the district court said. The district court said she had no reason. Well, the district court said she didn't have a strategic reason. That's exactly right. Right. But, Your Honor, in Pinholster, the Supreme Court was faced with a similar situation. And in Pinholster, the Supreme Court said, and I quote, the court of appeals was required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had proceeding as they did. But here we have a finding of fact by the district court. I'm not talking about benefit of the doubt in case of ambiguity and so on. The district court has given us a factual finding. And you're telling us Pinholster tells us we can ignore a factual finding by the district court? I didn't say that, Your Honor. I'm not saying that. I'm saying that I believe the record is ambiguous as to what counsel was thinking. Well, it's ambiguous until we get a fact finding by the district court. But, I mean, to the extent the district court found there was no strategic reason, and therefore then it's deficient? Is that the suggestion that somehow then we can't entertain any other possibilities? That sure sounds like Pinholster and Richter all over again. Was there a strategic reason why a Wheeler motion was not made as to any or all of these seven prospective jurors? Answer, I don't know why at this time. My question in response to your opening statement, that she was confronted with an all or nothing proposition and so on and so forth, it begs credibility to think that she couldn't have said that instead of, I don't know why at this time. But, again, you're talking two years ago. Was there in Pinholster any equivalent statement like that? I believe in Pinholster the attorney said that he couldn't remember. Couldn't remember. Right. Okay. And that seems similar to her statement here. Again, I mean, if the suggestion seems to be somehow there's deficiency when counsel says, I didn't have a strategic reason, I can't remember, I'm not sure, then that's deficiency. Again, that seems to run counter to what the Supreme Court has instructed. I don't remember the lawyer in Pinholster saying he didn't remember. I know Pinholster pretty well. I read that entire record back and forth. More than an attorney general did, by the way. I accept that. It was your dissent I quoted from, Your Honor. I do not remember. One of the lawyers was bad. I don't want to quibble with you about this. Right. I think a fair characterization would be to say that it was ambiguous in Pinholster, and the Supreme Court said you've got to entertain possible reasons, as long as they're not directly contrary to the record. So is your position, sort of the opposite of the question I was asking your opponent, is your position that there could not be an effective assistance of counsel with respect to not making a passing claim, or this wasn't it? I'm saying in this case, there's — We don't know. In this case, the best we can say is we don't know. Is that right? No, I don't think there was any deficiency. I don't think Petitioner can meet his burden on prong one. So, counsel, I don't think I heard an answer from you to Judge Fletcher's question about what do we do about the fact that we've got a finding of fact by the trial court that she didn't have a reason. I don't specifically recall the district court specifically making a finding that she didn't have a strategic reason. There were two declarations given, one prepared by Petitioner, one prepared by our office, and I think that the best that you can say about counsel's recollection is she can't really remember why she didn't make a motion. Given that, I think it's fair to entertain possible reasons, again, as the Supreme Court has said, as long as they're not contradicted by the record. Well, the district court finds she has no strategic reason. What I understand that to mean is she has no strategic reason for making a motion she thought she could make. You know, like making an objection at trial. A question is asked, and you have to make a decision. Do you object to the question or not? And sometimes lawyers have a strategic reason, saying, you know, I could win the objection, but I'd just as soon hear the witness say, answer the question, because it's going to be, it helped me more than hurts me. So what I understood the finding here to be is she didn't say, I know I have a wheel of motion I can make, and I have some other reason for not making it. I don't think that precludes her simply saying, I don't think I have a wheel of motion to make. I don't have any reason to make a motion. Well, separate and apart from whether or not she had a strategic reason or not, it's obvious that the court seems to not want to entertain other plausible reasons, which I have put forth. Well, the most you can say in terms of her having had a strategic reason is that she says, I can't remember. It may go so far as to say she simply didn't have one, but there's not a hint that she's ever given us of any strategic reason. I agree with that, Your Honor, but again, as you pointed out in your question to opposing counsel, this is an attorney who was very concerned about Hispanics on this jury. She was concerned. She raised this in the beginning, and so to suggest that she just simply was inattentive I think is contradictory. Or that she didn't know the law. Well, great. I think that seems contrary to the record. But I guess my point would be- Well, wait. I mean, she was asking a very peculiar set of questions, aside from the veneer challenge. She then asked a series of the Hispanic prospective jurors, essentially whether they would be cowed if they were the only Hispanic-surnamed person on the jury. Would that cause you to bend over backwards to not support my plan? And that's a funny question because it assumes, for some reason, that there are going to be one or an isolated number of Hispanic jurors on the veneer. Why would she be assuming that? But, again, Your Honor, I mean, with all respect- I mean, that's some evidence that maybe she thought she could do nothing- How does that establish deficiency? Just a minute. One possible reason is because she didn't know about Wheeler and she knew the prosecutor was doing this and she was concerned that there would be very few Hispanics on the jury and there was nothing she could do about it. I mean, that's the only way her questions make sense. But, again, if I may, whether or not she had a strategic reason, as this Court has stated numerous times, the ultimate question, and as the Supreme Court made clear in Richter, is was this subjectively reasonable conduct? Even if you assume that she didn't have a strategic reason at all, isn't the question- Sir, I asked you a question which was based on a very specific- with like an explanation for what you think that set of questions meant that's consistent with your theory. What her questions- Those specific questions, the way she asked them, what did she mean by them? What inference could you draw from the record about this peculiar set of questions about if you're the only Hispanic on the jury, how will you behave? She asked several people that. I don't know, Your Honor, with all respect. I don't know. I didn't think about it because I don't see how it's relevant to the question of deficiency here. Well, didn't the district court address this issue? I'm looking at page 43 of its order, lines 7 through 12, where the district court concludes in denying relief and says- this is Judge Ishii's language- it is clear that both the prosecution and the defense were concerned with ethnicity issues in this case. Mr. Vendrasco's, the prosecutor's, ethnic-specific questions, like Ms. Huffman's ethnic-specific questions, were directed to sort out impartiality issues. Given the controlling precedent in 1983, Ms. Huffman could not have sustained her burden to show a strong likelihood of discriminatory purpose or group bias then required by Wheeler or a pattern and practice of discrimination under Swain. Doesn't that basically sum up your position? It does, Your Honor, but again, I want to draw the court back one step from whether a Wheeler motion would have been successful. Part of my argument is, so what? Assume that a Wheeler motion would have succeeded, as I think one member of the court pointed out. A successful Wheeler motion means you start over with a brand new jury. Where is the evidence the petitioner has presented that shows that any reasonably competent attorney would have decided, I want to start over with a brand new jury? That's his burden. A reasonably competent attorney here could have said, I'm concerned about Hispanics. There's two-seated Hispanics. I like this jury. I don't want them to start over. But now you're speculating. I'm not speculating. I could speculate and say she's in a dispute with her husband who has shot her. The prosecutor's office is pursuing criminal charges against her husband, even as it is pursuing charges against her client. I'm now speculating, and I confess that it's speculating, that she's reluctant to charge the prosecutor with being a racist and with violating California Wheeler law while the prosecuting office, in the exercise of its discretion, is pursuing criminal charges against her husband. So why is your speculation better than mine? And, Your Honor, that is precisely why the Supreme Court said in Richter that this inquiry is into objective reasonableness of counsel's performance, not counsel's subjective state of mind. So we don't need to engage in a speculation. I'm sorry. Subjective state of mind is not the same thing as having a strategic reason. But my point is that strategic reason is one way of looking at deficiency. But another way of looking at it is to say, could some hypothetical reasonable attorney have declined to make this motion and could petition or demonstrate otherwise? That has nothing to do with strategic reasons. That has to do with objective reasonableness. In that kind of, first of all, when you have six out of eight, under your postulate it seems that the all or nothing consequence of a Wheeler motion succeeding would basically say nobody wants to start all over again. It would be the most exceptional case. Therefore, the prosecutor gets a pass because there's no evidence to contradict that. In this case, there is evidence to contradict that in the sense that if that was her concern, it is not credible that she couldn't remember that when asked about it even four years later. It is such an obvious answer. But, Your Honor. It is such an obvious strategic point of view. That's what you seize upon. And, yes, maybe in the abstract you can say, well, we're looking at would a reasonable attorney, any reasonable attorney do that. Well, that's okay. But here you have information from the actual attorney who says, doesn't say that. That's not what she was thinking. But, Your Honor, that's just what. And if you're saying that that doesn't count, that if some reasonable attorney might have come to that, but this incompetent attorney who made a terrible judgment call on it didn't, you know, that wasn't her reason, but some other, you know, good attorney could have come to this. I don't think that's what the law is intended to do and say, you know, an incompetent attorney who makes a mindless, goes through a mindless performance and lets things go by, can suddenly be rescued because maybe some competent attorney may have come to that conclusion. But that's precisely what Richter says, Your Honor. I mean, that's precisely, Richter says, and I'm quoting from Richter, that the inquiry is not into, it's into objective reasonableness. What if she had said, you mean to say that if she had said, the reason I didn't make this motion was because I never read Wheeler and didn't know anything about it, that we could just ignore that and say, but a competent lawyer might have come to the same conclusion. That's what Richter says. I mean, that's precisely, I'm saying this, I'm saying this, that there's two ways that you can deal with deficiency claims. One, you look to see if there's a strategic reason. If there is a strategic reason, obviously you're looking at what counsel said, okay, and that is somewhat of a subjective inquiry. But, but, if you need not do that, if the conduct was objectively reasonable, meaning some reasonably hypothetical attorney could have declined to make a Wheeler motion. Yes, there's two ways to do that. What if she had said, as Judge Fletcher suggested, the reason I didn't do it is because they were prosecuting my husband and I needed the goodwill of the prosecutor? Could a reasonably competent attorney, some other attorney, have declined to make a motion for a good reason? Oh, gee. Well, that's what Richter says. Now, I don't need that in this case. I don't need that in this case because in this case, there's record evidence that suggests that she did have a strategic reason. Now, we give a lot of deference to a trial lawyer who says, I exercised my strategic judgment and I did the following.  It turned out to have been an egregious, horrible mistake, but it was my objective, it was my best judgment at the time, it didn't work out. Yes, I agree. We're required, I haven't said anything yet except for just statements, we're required to defer to that because even, you know, lots of strategically defensible judgments don't work out. Now, and we defer to a judgment that was made that had some basis. That's not what we do when the lawyer says, I didn't understand the law and I had no reason whatsoever to do that or not to do that. There's nothing we can defer to. Well, you know our strategic reason could have been to make a record for an appeal. That goes on all the time. Yes, Your Honor, but the, I'm sorry, were you finished? Yeah. But in this circumstance... Isn't that a strategic reason?  I just asked you, well, I mean she may have felt that this was a case that was kind of hopeless and she had these other problems, you know, the relationship between her and the prosecutor and there are many lawyers that raise issues or don't raise issues because they're looking for issues to take up on appeal. That's their strategic reason for asking a question or keeping their mouths shut. Now, you know that happens all the time, don't you? Yes. Huh? Yes, that could very well have been a reason. You're saying she could have been sandbagging. That's right. Right. I mean, that's the point is that however counsel... I'm sorry. However, counsel, it seems to me that we're struggling here with words. Sometimes, don't you in your voir dire, and I'll say that in Idaho, say vor dire, but in Idaho, vor dire, sometimes you're making challenges of jurors for strategic reasons and sometimes you just make challenges for legal reasons that have nothing to do with strategy. In other words, legally, I can challenge somebody or I can't, but on strategy, I'm trying to get the best juror I want. So my worry is that you're harding too hard on this language. It seems to me that if, in fact, she has read the California law as to what Wheeler recommends or says has to be and she determines there is no Wheeler challenge available, it has nothing to do with strategy at all. It has to do with a legal challenge she'll make or she won't. And if she's not going to win, why make it, especially when she has what you have to say? And it has nothing to do with strategy because I've picked a lot of jurors vor dire on strategy. I'm wondering why you're struggling with the chief gave you that out a long time ago. Well, again, I think there's lots of reasons. Sometimes I was defending this bad guy who was drunk. I knew strategy why I didn't want, but their legal challenge to make had nothing to do with strategy at all. Yes, I think there are lots of reasons why she may not have made a Wheeler motion. Some of them may be strategic. Some of them may be legal. Some of them may be that she thinks this is a pretty good jury. As the chief pointed out, she was concerned with, or maybe it was Judge Fletcher, she has concern with getting some Hispanics on the jury. There's two seated Hispanics. The result of making a Wheeler motion is you start over. Isn't that the type of post-ad hoc rationalization that the Supreme Court has said we should engage in? Well, I think, again, that Wiggins has been modified somewhat by the language in Richter in Pinholster. I think Richter makes clear. You referred to Pinholster. Did you cite to Pinholster in your briefs? I did not. And did you file a 28J letter? No, I did not. What? With regard? I mean, insofar as you're arguing that this was not a legally viable motion, is that because, as Judge Kaczynski, Chief Judge Kaczynski was suggesting, you think that they wouldn't have gotten over the first, that she wouldn't have gotten over the first hump with regard to a prima facie case? Or is it because, as to the particular explanation, you think that there are, as the panel concluded, that there were particular explanations that could and would have been given with regard to the particular jurors? I think there's a number of reasons. One, she didn't think she could prevail on the motion because she thought, or she may have thought, again, it's might she have thought. It's not whether the prosecutor in fact had race-neutral reasons. It's could she have thought that he might have had race-neutral reasons. So that's one possibility why you wouldn't make the motion. Two, she might have thought that she couldn't legally prevail given that there were two seated Hispanics on the jury. And why would she have thought that? Well, because I think that the law was somewhat unsettled until 1987 when in People v. Snow, when the California Supreme Court made it clear that the presence of a couple of minority jurors already seated would not stop the motion. I guess what I would like to know specifically is that if she got to the next stage, how could she not have prevailed on the Martinez challenge? What possible explanation could there have been for striking that juror? Well, I mean, again, I think the district court, and I know the panel decision is not relevant, but the district court found reasons. My point is more fundamental, I guess. All right. She don't want to answer that. What are your reasons? My point is more fundamental that she need not have made the motion in the first place even if it would have prevailed because this may have been a good jury for her client. I haven't heard anything from Petitioner addressing that fundamental argument that a motion here, a successful motion, means you start over. Where's the tactical benefit to her client? She doesn't care about equal protection rights of the jurors or society at large's interest. Is she supposed to put the interests of society and the jurors ahead of her client? Counsel, did she say that? Did she say in her declaration, I like this jury? No, Your Honor, we've been through that. But, again, I mean, Penholster and Richter, the Supreme Court, seems to say that you can't just pigeonhole the defense attorney. Could you please show me what language in Richter you're talking about? I'm looking at it now, and I don't see the language. The language I see says, although courts may not indulge post hoc rationalization for counsel's decision-making that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There's a strong presumption that it reflects trial tactics. And that's what it says. What else does it say? Well, that's just it, Your Honor. And then in Penholster, again, I'm quoting from Judge Kaczynski's dissent, which the Supreme Court cited, the court of appeal was required not simply to give the attorney benefit of a doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did. Now, that's Judge Kaczynski's dissent. What does the Supreme Court say? No, that's the Supreme Court citing Judge Kaczynski. This is Penholster. So that's the Supreme Court's language? Yes, Your Honor. Okay. 131, Supreme Court, 1388, 1407. And that's what I'm asking this Court to do. But is it a range of possibilities of what this lawyer may have done or what an objective attorney may have done? Because this attorney told us she didn't have a reason. Well, affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did. That sure sounds like they're talking about the attorneys in that particular case, Your Honor. Right. And this attorney in this particular case, didn't she tell us she didn't have a reason? Well, I think the record is ambiguous. I mean, so is Your Honor suggesting that if the attorney can't remember or she doesn't recall a strategic reason, then that I'm unable to posit plausible reasons? No. Because that sounds like exactly what the Court. Counsel, I'll just finish my point. I'm sorry, Your Honor. It's not just that she said she didn't remember. It's that she's telling us she didn't have a reason. If you think it's ambiguous, if you think your declaration is ambiguous, is it your position that we ought to remand to flesh that out and figure out whether she meant something else? I don't see how that would help, Your Honor. I mean, these declarations were in 1987 and 1988. What reason did the prosecutor give? He couldn't remember his reasons, Your Honor. Oh, he couldn't remember his reasons. Correct. That's right. Yes. But he knew you had, what was the number? He removed six Hispanic prospective jurors. Is that right? He did, yes. He did. Now, and he can't think of he doesn't remember what his reason was. That's what he says. But he knew he had to know, the reasonable prosecutor, that he was starting to tread on thin ice. And so in order to protect his own record, then you would have thought, if he'd have been thinking properly, that he would have come up with a reason that was non-discriminatory. But he didn't do that either. I accept that, Your Honor. But again, the focus here now is on defense counsel's conduct. He said he didn't remember, but isn't there a transcript? No, because, Your Honor, there was no motion, so there was no transcript. Nobody discussed the transcript. When voir dire goes on, is it that on the transcript? Yes, there's a transcript of voir dire, yes. Yeah, well, that's available to you. And you're asking us to. . . Isn't it? I'm sorry. That's available to the State. The transcript of voir dire? Yeah. Yes. Yeah, but you didn't get it. No, I have it, Your Honor. You have it? Yes. And what did he say? Did the prosecutor say anything? No, Your Honor, there was no motion, so there was no opportunity for the prosecutor to give his reasons. And then when the declaration was taken four years or five years after the trial, he stated he could not recall his reasons. Well, what did he – what were his questions to these prospective Latino jurors? What did he ask them? Your Honor, I, with all respect, I do not have the voir dire in front of me to. . . Well, that's what this whole big argument we spent a half hour about is what went on in voir dire, and you don't – you can't enlighten us on it. I mean, this case is a catastrophe. That's right. You can't enlighten us on it. Is that a question or a statement, Your Honor? That's a question. I can't answer that. Why not? Was there anything put into the record before the district court, parsing the transcript? The district court, Your Honor, yes. The district court went through, and the district court determined that there were plausible race-neutral reasons for the challenges, and therefore a reasonable attorney might have concluded that there was no merit to a Wheeler motion. Okay. Can I – you've twice cited the fact that there were two already seated. Is that in the record? Yes, it is, Your Honor. Seats three and five were Hispanic jurors. If you'd let me finish, Mike. I'm sorry. Okay. Were they seated before the other strikes happened? Yes. That's in the record? Yes, Your Honor. All right. Thank you. In the remaining half minute you have, let's say we disagree with you on the question of whether counsel was competent. What is the prejudice analysis? The prejudice analysis is that it's our argument that, assuming deficiency, that the petitioner has to show that the result of his trial would have been different, and that he cannot do that. Wait a minute. The law as it existed at the time of Wheeler is that you make a successful Wheeler objection. So if we were to conclude, which we may or may not, on a prejudice analysis that had a Wheeler motion been made, it would have succeeded. I think the law in California at the time, if you look at Johnson, who was decided at the same time as Wheeler, you automatically get a new trial. Your Honor, with all respect, I believe Judge Kaczynski's question was about the Strickland prejudice. Well, that's my question, too. That is to say, what's the prejudice? So we assume that it was ineffective assistance of counsel in the sense that she did not make a motion that she should have made. And now we say, okay, and then the prejudice, what would have happened had she made the motion, if she had succeeded in the motion in California, California law at the time was you get a new trial. Is that wrong? With respect, I wouldn't analyze the prejudice of Strickland that way. I would say that's part of the condition. Excuse me, let me start right there. Am I wrong that under the law at the time, that had she succeeded on a Wheeler motion, the remedy would be she gets a new trial? You are correct. That's correct. That's in California? Yes. That's in California at the time. Well, what about the federal law? Francis v. Henderson, which is 425 U.S. 1976, says that if it isn't a direct appeal of structural error, which it isn't, then we must have a hearing to demonstrate the prejudice. Why wouldn't we go under U.S. law? Yes, we would. And that's my position. But again, I think Judge Fletcher's point was that the remedy under Wheeler would be a new trial. But my point is that the question under Strickland would be, do you presume prejudice here or do you have to demonstrate prejudice? And if you have to demonstrate prejudice, how do you demonstrate prejudice? And if you look at Francis v. Henderson, that suggests that you have to demonstrate prejudice by showing that the result of the trial would be different. But could anybody ever do that? Could that ever be done? Ever. I acknowledge I can't think of a situation where it could be done. It is draconian, but it does – there are circuit courts that have held that even as draconian as it is, under Strickland, you have to show the result of the trial. Even if the Strickland error was not raising a structural error? Absolutely, yes. And there's a split on that, right? There's a split on that, yes. I think you wouldn't stop with merely getting a new trial. You would say he'd also have to show that the new trial would have acquitted him. You'd have to show that a different jury composition would have led to a different result. Yes. If somebody doesn't have a lawyer at a strategic part of the trial, and then a later appointed lawyer doesn't raise that, unless you can show there was prejudice from not having a lawyer, there's nothing to be done about it. Well, it depends. I mean, there's three situations, like actual denial of counsel, constructive denial of counsel. Structural error. Right. But those specifically in Bell v. Cohn, the Supreme Court has said, those three instances, you don't have to show prejudice. So if you're hypothetical. In an ineffective assistance context. Yes. But, yes, other kinds of structural error, like denial of a public trial or this type of case, yes, you'd have to show actual prejudice, and I acknowledge I'm not sure how you could do that. Thank you. Thank you, Your Honor. Okay. We'll hear from the back of the Petition. Thank you, Your Honors. If a defense counsel had made a Wheeler motion, either a prima facie case would have been filed or it would have been denied. Let me ask you this question, Mr. Bedrick. Is there a transcript of the voir dire? Yes, Your Honor. A thousand pages worth. And have you read it? Yes, Your Honor. And did the prosecutor, what sort of questions did he ask the jurors that he excused? He asked them questions about whether their ethnic identity, the same as the defendant, would affect their position. The prosecutor also said at some point in response to defense counsel's motion for representative panel, I oppose anything along the lines of affirmative action. And I believe on these facts a prima facie. And who said that? The prosecutor. The prosecutor. Yes. And what did the judge do? The judge thought there was a representative panel and he did nothing. Is that what he said? Yes. That's on the record. Yes. But defense counsel did not make a Wheeler motion. Had she made one, on this record, a prima facie case would have been filed. And then the prosecutor would have tried to rebut it and he could not have rebutted it with respect to Mr. Martinez, who was a retired truck driver. He could not have rebutted it as to Ms. Carrillo. I don't think he could have rebutted it as to Ms. Hernandez. And under those circumstances, the existing juror would have been discharged. Mr. Carrillo would not have been convicted in this trial by this jury. And that satisfies the strict one. So having him not be able to justify three of them isn't enough? Would it be enough? Having, once having, a prima facie case can be filed with one. But the improper discharge of even one juror for a race-based reason is sufficient to result in a reversal in a new trial. Let's assume, and I'm saying assume, let's assume that we were to hold that it was defective performance not to make a Wheeler motion, and we were to find, assume further, that had a Wheeler motion been made, it would have succeeded, and that a California court, having done that, would have set it aside and said we need a new trial. Is that sufficient prejudice under Strickland now as that is interpreted under federal law? I believe it is, Your Honor, because Strickland calls for a reasonable probability of a more favorable result. It would be impossible. A more favorable result would be that this jury would not have convicted this defendant, we would not have this conviction, and who knows what we'd have otherwise. So it would be just like any other case where there is reversal for IAC, where a piece of evidence was improperly included or excluded. Mr. Harris. What was the basis for the race-based reason? For, I'm sorry, Your Honor. Is there anything in that transcript? The prosecutor, because. What did the prosecutor say when, concerning these jurors, these Latino jurors that were preemptor or excused, what did he say that would constitute a race-based reason? He preempted them without stating any reason because he wasn't asked to state a reason. However, during his questioning, his questioning very much challenged the jurors on the basis of their ethnicity, and he said that I oppose anything resembling affirmative action. So that was his general, that was his specific questions to the juror, and that was his general approach. And that's your argument, that's what your argument of race-based reason is on, based on. My major argument is that he preemptorily challenged six out of eight Hispanics, as to most of whom they're perfectly acceptable jurors from the point of view of the prosecution. Neither the attorney general nor the panel majority has identified any valid race-neutral reason, even speculating as to Mr. Martinez, they have not identified any valid race-neutral reason as to Ms. Carrillo or as to Ms. Hernandez. So that's what would have come up had a wheeler motion promptly been made, and that is what the record shows in terms of the types of people who the prosecutor was challenging. Okay. Thank you. Thank you. This argument stands submitted. We are adjourned.
judges: Kozinski, Pregerson, Fletcher, Fisher, Berzon, Tallman, Clifton, Ikuta, Smith, Murguia, Christen